## ADAMS et al. v. KING et al.

No. 8213—Opinion Filed Jan. 8, 1918.

On Rehearing, May 21, 1918.

(170 Pac. 912; 173 Pac. 206.)

**1. Appeal and Error — Discretion of Trial Court—Vacation of Judgment.**

A trial court during the term at which a judgment is rendered has a wide and extended discretion in vacating and setting aside such judgments and granting a new trial; and, unless an abuse of such discretion is clearly made to appear, the action of the trial court in vacating a judgment and granting a new trial at the same term at which the judgment was rendered will not be disturbed.

**2. Appeal and Error — Finding of Jury—Conclusiveness.**

When the trial court submits to the jury under proper instructions the theories of the case presented by both plaintiff and defendant and there is sufficient competent evidence to reasonably support the verdict, the finding of the jury is conclusive on appeal.

**3. Frauds, Statute of—Sale of Goods—Delivery and Acceptance.**

The delivery and acceptance at any subsequent time of any part of the goods or chattels which are the subject of a parol contract, within the statute of frauds, while such contract remains unabrogated, take the contract out of the statute of frauds, and make valid the entire contract.

**4. Evidence—Contents of Writing—Secondary Evidence.**

To render parol testimony of the contents of a writing admissible in evidence, it must be shown by competent testimony that the writing has been lost or destroyed, or that it is otherwise unavailable through no fault of the party offering such secondary evidence.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by S. W. King, Jr., and another against P. H. Adams and another. Judgment for plaintiffs, and defendants bring error, and plaintiffs file a cross-petition in error. Affirmed upon cross-petition, and reversed and remanded upon defendant's petition in error. On rehearing, affirmed.

Mark Goode, for plaintiffs in error.

Chas. West and H. H. Hagan, for defendants in error.

RUMMONS, C. This action was instituted in the district court of Oklahoma county by the defendants in error, hereinafter styled the plaintiffs, against plaintiffs in error, hereinafter styled the defendants, to recover damages for the breach of a contract of sale of 250 bales of cotton. The plaintiffs allege a parol contract between plaintiffs and defendants by the terms of which defendants sold to plaintiffs 250 bales of cotton for delivery in August, 1913, at Port Aransas Pass, Tex.; that the defendants delivered and the plaintiffs accepted 100 bales of the cotton so sold; that defendants failed, neglected, and refused to deliver the remaining 150 bales of the cotton so sold, and prayed judgment for damages for such breach of contract. The defendants answered, denying the contract for the sale of 250 bales of cotton; denied the delivery of 100 bales of cotton. By way of cross-petition the defendants alleged that they had purchased under written contract a large amount of cotton for delivery at Sinton, Tex., and that they sold and assigned to plaintiffs contracts calling for delivery of 150 bales of such cotton; that plaintiffs accepted such assignments and orders, but failed to take any action thereunder until long after the time fixed by said written contracts had expired, and until it was impossible to obtain the cotton sold under said contracts, and prayed damages because of such neglect of the plaintiffs. On September 22, 1915, the defendants failing to appear, plaintiffs took judgment by default in the sum of $1,250. Two days thereafter the defendants filed motion to vacate said judgment. The plaintiffs demurred to the motion, which demurrer was overruled, plaintiffs excepting. Plaintiffs then filed a response, and the motion was heard by the court at the same term at which the default judgment was rendered. The court found that the default judgment should be vacated, and entered an order vacating such judgment and granting defendants a new trial, to which the plaintiffs excepted. Thereafter the cause was tried to a jury, resulting in a verdict for plaintiffs in the sum of $625. The defendants prosecute this proceeding in error to reverse the judgment of the court rendered upon such verdict. The plaintiffs prosecute a cross-petition in error to reverse the judgment of the court vacat-

ing the default judgment and granting defendants a new trial.

We will first consider the questions presented by the cross-petition in error of the plaintiffs. It has been well settled by this court that the trial court during the term at which a judgment is rendered has a wide and extended discretion in vacating or setting aside such judgment and granting a new trial of the cause. McAdams v. Latham, 21 Okla. 511, 96 Pac. 584; Brown v. Capital Townsite Co., 21 Okla. 586, 96 Pac. 587; Todd v. Orr, 44 Okla. 459, 145 Pac. 393; Hamra v. Fitzpatrick, 55 Okla. 780, 151 Pac. 665. The trial court may exercise its inherent power over its judgments during the term at which they were rendered either upon the application of the parties or upon its own motion; and, unless an abuse of such discretion is clearly made to appear, its action in vacating the judgment and granting a new trial during the same term will not be disturbed on appeal. The record in the instant case does not clearly disclose an abuse of such discretion. The trial court therefore committed no error in ordering the default judgment vacated and granting defendants a new trial, and its order should be affirmed.

The defendants under several assignments of error urge that the evidence in the instant case was not sufficient to take the contract sued upon out of the statute of frauds, and that the court erred in overruling their demurrer to the evidence of plaintiffs and in refusing to direct a verdict for the defendants. It was the contention of the defendants that the 250 bales of cotton claimed to have been purchased by the plaintiffs from them was sold in two transactions: that they sold plaintiffs 100 bales of cotton for delivery in August and 150 bales of cotton at another time for delivery in September. It was further contended by the defendants that admitting the truth of the allegations and the evidence of the plaintiffs, the evidence showed that defendants had breached the contract set up by plaintiffs, and that after such breach defendants delivered and plaintiffs accepted 100 bales of the cotton, and that plaintiffs and defendants then entered into a new agreement with reference to the remaining 150 bales. It is urged by defendants that their new agreement was also within the statute of frauds, and that as no memorandum in writing had been made thereof and no part of the merchandise delivered and accepted, and nothing paid on the purchase price, such contract was void and unenforceable.

As to the first contention of plaintiffs the court submitted under proper instructions to the jury the issue as to the contract being entire for 250 bales or as to there being two contracts, one for the sale of 100 bales and another for the sale of 150 bales. The jury found this issue against the defendants; and, as there is sufficient competent evidence to reasonably support the verdict, the finding of the jury will not be disturbed.

Counsel for defendants cite authorities in support of their second contention which go to the effect that provisions of the statute of frauds apply with equal force to any modification of an original contract which falls within the statute of frauds. The evidence in the record, however, does not make the authorities cited applicable to the instant case. It appears that after the time for performance of the contract had expired the defendants wrote the plaintiffs a letter, the substance of which was to ask for delay in the delivery of 150 bales of the cotton until September 15th and September 20th. The record does not show that plaintiffs ever replied in any way to this communication, or that an agreement was ever entered into between plaintiffs and defendants for extending the time of the delivery of 150 bales of the cotton, but so far as the record shows no modification of the original contract was ever made, although it appears that plaintiffs were willing to waive the breach of the contract as to time and accept the delivery of the 150 bales of cotton on September 15th and September 20th. This plaintiffs had a right to do, and the defendants cannot well complain of the forbearance of the plaintiffs.

If there was competent evidence to show the delivery of 100 bales of the cotton by defendants and its acceptance by plaintiffs at any time after the contract was entered into, while it remained in force, such delivery and acceptance take the contract out of the statute of frauds and make it valid and enforceable. The Territorial Supreme Court in Gabriel v. Kildare Elevator Co., 18 Okla. 318, 90 Pac. 10, 10 L. R. A. (N. S.) 638, 11 Ann. Cas. 517, note, construing our statute of frauds found at section 941, Rev. Laws 1910, says:

"A delivery and acceptance of any part of the goods or chattels which are the subject of an oral agreement, and within the statute of frauds, at any subsequent time, takes the contract out of the statute of frauds, and makes valid the entire contract."

In Conelly Const. Co. v. Royce, 35 Okla. 425, 130 Pac. 146, this court says:

"A delivery and acceptance. at any subsequent time, of any part of the goods or chattels which are the subject of an oral agreement and within the statute of frauds takes the contract out of the statute of frauds and makes valid the entire contract."

Under these authorities it seems clear that, the contract not having been abrogated, a delivery and acceptance of part of the 250 bales of cotton at any time after the making of such contract would take the contract out of the statute of frauds and render it valid and enforceable.

The defendants, however, denied the delivery of any part of the cotton. The evidence of the plaintiffs showed that Snell Bros. delivered to them 100 bales of cotton for which they paid Snell Bros. and applied this 100 bales of cotton upon their contract with defendants. The evidence shows that plaintiffs never paid the defendants anything. To show that this 100 bales of cotton was delivered to plaintiffs by Snell Bros. on behalf of the defendants and as a part performance of defendants' contract of sale. plaintiffs offered parol evidence of the contents of a letter from defendants, showing that this 100 bales of cotton was to be delivered by Snell Bros. on behalf of defendants and to apply on this contract.

To lay the foundation for secondary evidence as to the contents of this letter the record shows the following evidence:

"Q. Were you authorized by Adams & Melson to accept this cotton of Snell's for their account?

"Mr. Goode: Objected to as incompetent, irrelevant, and immaterial. and not within the issues of the case, and calling for a conclusion of the witness.

"The Court: Sustained as calling for a conclusion of the witness.

"Q. Why did you credit Adams & Melson's account with this 100 bales of cotton if delivered by Snell?

"Mr. Goode: The same objection.

"The Court: Overruled. Exceptions allowed.

"A. Because of a letter to that effect from Adams & Melson. Q. Do you know where that letter is? A. Holley claims the letter was stolen from him.

"Mr. Goode: We move that the two last questions and answers be stricken from the record, for the reasons they are incompetent, irrelevant, and immaterial, and not the best evidence.

"The Court: Overruled.

"Mr. Goode: Note our exceptions.

"Q. Mr. Pondrum, what did that letter, in substance, contain with reference to this Snell cotton? A. My recollection is, of that letter, that Messrs. Adams & Melson wrote us that they had left Texas, and had this cotton brought in to protect their contract, and asked us to take 100 bales from Snell Bros. and 100 bales from Martin. Q. For that reason you credited Adams & Melson's account with 100 bales? A. Yes, sir.

"Mr. Goode: We move to strike the last question and answer, for the reason that it is leading. suggestive, wholly incompetent, and not within the issues of this case.

"The Court: Overruled.

"Mr. Goode: Give us an exception."

The defendants complain of the admission in evidence of the contents of this letter. It is apparent from the testimony that the absence of the letter was not sufficiently accounted for nor was the inability of the plaintiffs to produce the original of such letter sufficiently proved. The evidence of its loss is purely hearsay. Holley. who the witness testified claimed that the letter was stolen from him, was a witness at the trial, and testified that some papers were stolen from his pocket including a letter from the defendants, but no connection is shown by his testimony between the letter stolen from his pocket and the letter, proof of whose contents was testified to by the witness. In order that parol testimony of the contents of a written instrument may be introduced in evidence, it must be clearly established by competent testimony that it has been lost or destroyed, or is otherwise unavailable, through no fault of the party offering to prove its contents. Barnes v. Lynch, 9 Okla. 156, 59 Pac. 995; Landon v. Morehead, 34 Okla. 701, 126 Pac. 1027; M., O. & G. Ry. Co. v. West, 50 Okla. 521, 151 Pac. 212; Farmers' National Bank v. Hartoon, 60 Okla. 193, 159 Pac. 844; National Surety Co. v. Oklahoma Nat. Life Ins. Co., 74 Oklahoma. 165 Pac. 161. The only evidence of the loss of this particular letter was purely hearsay and clearly incompetent, The trial court therefore erred in admitting parol evidence of its contents. As it is the only evidence in the record connecting the defendants with the delivery of any part of the 250 bales of cotton, and as the plaintiffs rely upon the delivery and acceptance of this 100 bales of cotton to take this contract out of the statute of frauds, the admission of this incompetent evidence was highly prejudicial to the defendants and constitutes reversible error.

The defendants complained of the giving of several instructions by the trial court,

but- they do not clearly point out any error in such instructions. After an examination of the instructions complained of, we are of the opinion that the trial court committed no error in giving the same.

For the error indicated, the judgment of the trial court should be reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.

---

On Rehearing.

PER CURIAM. The petition for rehearing filed by the defendants in error called to the attention of this court certain evidence in the record which they contend establishes by competent evidence the loss of the letter, the contents of which were proved at the trial by parol evidence, and on this showing a rehearing was granted.

Upon a careful re-examination of the questions presented on appeal by the plaintiffs in error and by the defendants in error in their cross-appeal, we are of the opinion that all of said questions were correctly decided by the court in the opinion by Mr. Commissioner Rummons, except the one on which the rehearing was granted.

The trial court did not err in permitting the witness Pondrum to give parol testimony of the contents of the letter, which he testified he had received from Adams & Melson. As appears from the original opinion, Mr. Pondrum testified that he sent this letter to Mr. Holley, at Sinton, Tex., and that Mr. Holley had informed him that the letter was stolen from him. This testimony clearly showed that the letter was beyond Mr. Pondrum's control and that he could not produce the same at the trial. If this evidence, standing alone, was not sufficient to prove that the letter was lost, it was certainly sufficient when supplemented by the testimony of Mr. Holley, which is as follows:

"Q. Mr. Holley, where were you working in September, 1913? A. In Texas. Q. For whom were you working? A. King-Collie & Co. Q. Do you recall going to Sinton, Tex., on or about the 20th of September, that year? A. Yes, sir. Q. What was the purpose of your visit? A. I went to try to get some cotton from Mr. Martin. Q. Did you receive a letter from Mr. Pondrum then? A. Yes, sir. Q. I will ask you if it contained a letter from Adams & Melson? A. Yes, sir; to Mr. Pondrum. Q. What became of it? A. It was stolen out of my pocket. Q. And you were unable to recover it? A. Yes, sir; I was. Q. Did that letter relate to the cotton you were to receive from Martin? A. It did."

The learned commissioner doubtless overlooked this testimony when he stated in the original opinion that the evidence of the loss of the letter was purely hearsay, and that no connection was shown by Mr. Holley's testimony between the letter stolen from his pocket and the letter, the contents of which were testified to by Mr. Pondrum. Attention was not called to this testimony in the original briefs. It will readily be seen that Mr. Holley testified that Mr. Pondrum had written to him at Sinton, Tex., inclosing the letter from Adams & Melson, that this was the letter stolen from his pocket and that he had been unable to recover it.

Where a party makes a showing at the trial that the primary evidence is lost, or destroyed, or otherwise unavailable without his fault, it is not error to permit the introduction of secondary evidence.

There being no reversible error in the record, the judgment is affirmed.

All the Justices concur.